## Boyer *against* Rees.

The twenty-fourth section of the act of 1814 relating to insolvent debtors, does not make it the duty of a court, when an insolvent debtor is discharged, to decree that a majority in number and value of his creditors have consented in writing to exempt from execution the debtor's property for seven years : that is a fact to be judged of by a judge of the court from which the execution may issue, upon the application of the debtor to set the same aside.

The prothonotary of the court which grants the discharge, has no such power under the act.

A *scire facias* may be issued to revive a judgment which has been removed by a writ of error sued out without bail and still pending.

The consent by creditors to the exemption of the debtor's property, ought to be set up as a defence on the trial of the *scire facias.*

ERROR to the common pleas of *Berks* county.

Jacob K. Boyer, plaintiff in error, against Lewis Rees, indorsee of Samuel Wood, for the use of William Darling, Samuel Baird and Lloyd Wharton, defendants in error ; and the same plaintiff against Timothy Abbott and David Kirkpatrick, defendants in error.

On the 13th day of July 1830, Jacob K. Boyer was discharged as an insolvent debtor by the common pleas of Philadelphia.

And on the same day, the said court ordered and decreed that the said Jacob K. Boyer should not be imprisoned for any debt, &c. contracted prior to his discharge.

And also ordered and decreed, that whenever "a majority in number and value of his creditors should consent in writing thereto, he should be released from all suits ; and the estate and property he might afterwards acquire should be exempted from execution for any

[Boyer v. Rees.]

debt contracted, or cause of action created previous to such discharge for seven years thereafter."

And on the 31st day of December, A. D. 1831, the said Jacob K. Boyer presented his petition, setting forth that a majority both in number and value of his creditors had consented in writing, agreeably to the aforesaid order of the said court, and exhibited the same to the said court, and filed the same among the records of the said court.

Whereupon it was ordered by the court, that "he be discharged and released from all suits; and that the estate and property he might afterwards acquire should be exempted from execution for any debt contracted, or cause of action created previous to such discharge, for seven years thereafter."

On the 3d of August 1829, William Darling, Samuel Baird and Lloyd Wharton obtained a report of referees under the act of 1705, against Jacob K. Boyer for 3579 dollars 2 cents.

*Fieri facias* to November term 1829.

*Scire facias* to April term 1832.

*Scire facias* to August term 1833.

April 12th, 1834, removed to supreme court by writ of error, to May term 1834.

*Fieri facias* to August term 1834.

Debt, besides interest and costs, 4589 dollars 49 cents.

Levied on the 23d of April 1834, on all the personal property of the defendant; being all after acquired property.

On the same day, viz. the 23d of April 1834, Jacob K. Boyer petitioned the Hon. M. S. Richards, one of the judges of the common pleas of Berks county, stating the discharge under the insolvent laws, and the release and exemption of his after acquired property, agreeably to the fourteenth section of the act of 1814; and praying that said levy and execution be set aside, with costs.

Whereupon the said M. S. Richards, Esq. made the following order:

"*April 23d,* 1834.—A citation granted according to the prayer of the petitioner."

At the return the parties appeared, and the further hearing was continued until the 4th day of August, at ten o'clock A. M., being the first day of the then succeeding term.

On the 4th day of August 1834, on the hearing of the rule, the counsel for the defendant J. K. Boyer produced to the court a certificate under the hand and official seal of the prothonotary of the court of common pleas for the city and county of Philadelphia, of the discharge of the said Jacob K. Boyer under the insolvent laws; accompanied with certified copies of the orders and decrees releasing and exempting his property and estate for seven years thereafter to be acquired, from debts contracted or cause of action created prior to his discharge.

To the admission of which the counsel for the plaintiffs objected,

[Boyer v. Rees.]

on the ground of its not being a full and entire record; and after argument the court sustained the objection and rejected the evidence.

Whereupon the counsel for the defendant prayed the court to grant the defendant time to procure the record from the court of common pleas of Philadelphia; to which the plaintiff's counsel objected. But the court continued the further hearing indefinitely to enable the defendant to procure the entire record.

On the 15th of August, at 6 o'clock, P. M., being the last day of the term, the argument of the said rule was called up, and the counsel for the defendant produced the record.

And the counsel for the plaintiffs again objected to the admission of the exemplification of the record as evidence; and in support of their objection contended, that the court of common pleas of Philadelphia had no power to make an order releasing and exempting from execution the after acquired property of the debtor; and that the filing the consent in writing among the records of the said court was unauthorized, and any copy thereof not the best evidence, and no authority for this court to act upon.

Which objection the court, after argument, again sustained, and rejected the evidence; and decided that the court or judge before whom the rules to show cause why the executions should not be set aside, were taken, was the proper and only tribunal possessing the power under the fourteenth section of the act of 1814, to make the order or decree exempting the after acquired property from levy and execution; and as the case stood, the rule must be discharged.

Which was a perfect surprise on the counsel for the defendant, as the practice under that and prior acts had been acquiesced in for upwards of twenty-eight years.

And thereupon they prayed the court to continue the case for the purpose of obtaining an order from the court of common pleas of Philadelphia county, to transmit the original papers on file in said court to the prothonotary of the county of Berks, and thereby of enabling the defendant to comply with the opinion and requisition of this court.

To all of which the counsel for the plaintiffs objected; but the court made the following entry, viz.

"The court grant a continuation of the cause, provided the defendant give security by bond for the amount of debt, interest and costs; the security to be approved of by M. S. Richards, associate judge, and to be executed by 10 o'clock to-morrow morning, and in default thereof the rule to be discharged."

In pursuance of the above order of court, the defendant procured four able and responsible sureties, who with himself repaired to the chamber of Judge Richards, at half past nine o'clock, A. M.

At which time the counsel for plaintiffs were in attendance with a bond already drawn up, and a condition underwritten, binding the obligees to pay the amount of the execution upon the decision of the court in either event.

To which the defendant's counsel objected, as being contrary to

the order of the court, and requested the judge to prepare a bond agreeably to the directions of the court, or direct the manner in which the same should be drawn ; but the judge refused to draw a bond, or give directions how it should be done.

By this time the clock struck ten, and the counsel for the plaintiffs ' moved that the rule be discharged, as the order of the court directed the security to be given by ten o'clock ; and as the clock had struck ten, the time was past, and the judge's authority had ceased.

Whereupon the judge discharged the rule, and dismissed the parties.

And a *venditioni exponas* was forthwith issued and placed in the hands of the sheriff, returnable to November term 1834; and the defendant left without remedy.

On the 3d day of November 1834, being the first day of the term, the defendant presented his petition setting forth these facts, and prayed the court to reinstate the rule and give him the full benefit of the insolvent laws.

Which application was held under advisement until the end of the term, and was then rejected.

Whereupon the defendant sued out this writ of error.

Assignment of errors :

1. That all proceedings in the court below subsequent to the 12th of April 1834, were erroneous, because on that day a writ of error from the supreme court had removed the record of the original judgment and all proceedings on it from the common pleas to the supreme court.

2. The court below erred in permitting the proceedings on the *fieri facias* to go on, notwithstanding the existence of the order of the common pleas of Philadelphia county releasing the defendant from suit and execution for seven years.

*Parry, Hoffman* and *Scott*, for plaintiff in error.
*Wharton, Johnston* and *Smith*, for defendants in error.

The opinion of the Court was delivered by-

ROGERS, J.—On the 13th of July 1830, Jacob K. Boyer was discharged as an insolvent debtor by the court of common pleas of Philadelphia county, and on the same day made an assignment for the benefit of his creditors ; and-at the same time the court ordered, that the said Jacob K. Boyer should not be imprisoned for any debt, &c., contracted prior to his discharge ; and that whenever a majority in number and value of his creditors should consent in writing thereto, he should be released from all suits, and the estate and property he might afterwards acquire should be exempted from execution for any debt contracted or cause of action created previous to such discharge, for seven years thereafter.

On the 31st of December 1831, Jacob K. Boyer presented a petition to the court, setting forth that a majority in number and value

of his creditors had consented in writing, agreeably to the aforesaid order of the said court, and filed the same among the records of the court. Whereupon, the court ordered that he be discharged and released from all suits; and that the estate and property he might afterwards acquire should be exempted from execution for any debt contracted, or cause of action created previous to such discharge, for seven years thereafter.

On the 3d of August 1829, the plaintiff obtained a report of referees under the act of 1705, against the defendant, which was confirmed. On this judgment he issued a *fieri facias* to the November term 1829, which was returned *nulla bona ;* a *scire facias* to the April term 1832, returned served ; and an *alias scire facias* to the August term 1833. On the 12th of April 1834, the defendant removed the record, by writ of error, to the supreme court. Notwithstanding the writ of error, the plaintiff proceeded to trial on the *scire facias*, and obtained a judgment, on which he issued a *fieri facias* to the August term 1834, and on the 23d of April 1834, levied on all the personal property of the defendant, being all after acquired property. On these suits he obtained a rule to show cause why the executions should not be set aside, and as evidence that the property, which was after acquired property, was exempted from execution for the debt, which was contracted previous to his discharge, exhibited an exemplification of the record of the court of common pleas of Philadelphia county in relation to the discharge of the defendant, and the orders and decrees of the court, as above stated.

On the argument the counsel for the plaintiff took three grounds : · 1st. They contended that the act exempting after acquired property from execution, was unconstitutional. 2d. That the defence should have been taken to the *scire facias*. And 3d. That the record of the court of common pleas of Philadelphia county, was no evidence whatever that the defendant had obtained the consent of a majority in number and value of his creditors, that his property should be exempted from execution.

The first ground has been in a measure abandoned, and as it is, therefore, unnecessary to examine the question, we do not wish to be considered as expressing any opinion upon it. Our opinion will be confined to the other positions of the plaintiff's counsel.

It is our opinion that the defence should have been taken on the trial of the *scire facias*. The order is in the nature of a release, and might have been pleaded to that suit; and if it had been, the question would have been fairly and properly investigated before a jury, which is the legal and constitutional tribunal for the trial of all litigated questions of fact. To this it is answered, that the record had been removed to the supreme court, and that the cause was *coram non judice*. But it must be recollected that the writ of error had been sued out without bail, and was therefore no *supersedeas*. As, then, there was nothing to prevent the plaintiff from issuing a *fieri facias*, neither can there be any objection to issuing a *scire facias*, the

[Boyer v. Rees.]

object of which is to call on the defendant to show cause why an execution should not issue against him. If the record could be removed so as to prevent a plaintiff from having the fruits of his judgment without bail, there would be an end of giving bail on writs of error. Enough remains on the docket of the common pleas, notwithstanding the removal of the record, to enable the court to issue an execution to collect the debt, and as a necessary consequence, to issue process to show cause why execution should not issue. But it is said that the defendant could not gainsay the demand for execution, as it could not appear in that stage of the proceeding that the plaintiff intended to issue execution and levy on property afterwards acquired and protected by the order of the court. But to this it has been answered, that the *scire facias* is general, calling upon the plaintiff to show cause why execution should not issue, and that a judgment on a *scire facias*, in Pennsylvania, binds property acquired since the judgment. Thus, in Clippinger v. Miller, 1 *Penns. Rep.* 64, it is decided that the revival of a judgment, by an amicable *scire facias post annum et diem,* creates a lien on the real property of the defendant, acquired after the entry of the original judgment. The judgment on the *scire facias* is not merely a revival of the original judgment, but is a new judgment, and has been likened to a judgment rendered in an action of debt on the original judgment.

Third question. Was the second order of the court of common pleas evidence, that a majority in number and value of the creditors had consented to the release of the defendant's property? This point arises on the twenty-fourth section of the act of the 26th of March 1814, which declares, " that it shall be lawful for the court, by whom any debtor shall have been discharged, &c., to make an order, that whenever a majority in number and value of his creditors, residing in the United States, or having a known attorney therein, consent in writing thereto, he shall be released from all suits, and the estate and property which he may thereafter acquire, shall be exempted from execution for any debt contracted, or cause of action created previous to such discharge, for seven years thereafter ; and if after such order shall be so made, and a majority in number and value of the creditors shall have consented as aforesaid, any action shall be commenced or execution issued for such debt or cause of action, it shall be the duty of any judge of the court, from which the process issued, to set aside the same with costs.

This section the circuit court of the United States, in the Bank of the United States v. Frederickson, has decided to be unconstitutional, a decision which would seem to be in opposition to Mathe v. Bust, 16 *Johns. Rep.* 233 ; and Blanchard v. Russel, 13 *Mass. Rep.* 16. But, notwithstanding this decision, the courts of this state have continued to make the order. Taking the act to be constitutional, it is necessary on this point to examine the extent of the power which the act vests in the court. It seems to me that the court of common pleas has given the act its proper construction. The power of the

[Boyer v.\Rees.]

court is exhausted when they make the first order, for I cannot perceive any further authority granted to them.    They are not made the *judges* of the fact, essential by the act to the discharge of the insolvent's after acquired property, that he has obtained the consent thereto of a majority in number and value of his creditors.    It is left, as in justice it ought to be, to be examined and judged of by the court, or one of its judges, which issues the execution, to whom application is made for relief.    If the legislature intended to do more than authorize the court to make an order, on which the insolvent may proceed to obtain the written consent of his creditors, it is inconceivable that they should omit to give the creditors a day in court, or to provide for some notice of the decree of the court.    And this argument derives force from this, that if the second order is evidence, it must, from its nature, be conclusive; for it is the decree of a court of competent jurisdiction, on a matter coming directly before them.    The counsel in error seem to think that the practice in Philadelphia is founded on the authority of Chief Justice Tilghman, in Wager *v.* Miller, 4 *Serg. & Rawle* 123.    The chief justice incidentally remarks that, under the act of the 26th of March 1808, the court who discharged the insolvent debtor might, with the consent expressed in writing of a majority in number and value of his creditors, make an order that the debtor should be released from all suits. If the remark bears the construction put upon it, it is very evident that it was made without due consideration of the act; for it is plain, that the consent of the creditors is not required to authorize the court to make the order.    The order of the court is a preliminary, which enables the insolvent to obtain the consent of the creditors, so as to make it an effectual discharge of the property he may afterwards acquire; but there is nothing in the letter or spirit of the act which authorizes them to take any other steps in the matter.    In *Ingraham on Insolvency,* it is said to be the practice to make a reference to the prothonotary, upon whose report that a majority have given their consent, the order is made.    By this practice, the prothonotary is made, in some measure, a judge, for which I see no authority in the act.    It may also be attended with great injustice to creditors who have given no consent, and who may have had no notice of the proceeding.    It has been said, that a contrary practice would be inconvenient.    But surely it is no great hardship that those for whose benefit this provision is made, should be prepared with proof that the directions of the act have been complied with.    Nor would this be attended with more difficulty than is usual in the proof of the execution of other instruments of writing.    All that the act requires is, that the judge to whom the application is made, should be satisfied that a majority in number and value of his creditors have consented, in writing, to release the property, when it is made his duty to set aside the process with costs.

    Judgment affirmed.